AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL      DISTRICT OF      CALIFORNIA

JOSE GUADALUPE MEIJA

V.

MARAUDER CORPORATION, a California corporation, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] C06-00520-HRL (N.D. Cal.)

TO: QC Financial Services of California, Inc., d/b/a California Budget Finance, c/o CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached list of documents to be produced.

| PLACE | DATE AND TIME |
|---|---|
| Consumer Law Center, Inc.<br>12 South First Street, Suite 416, San Jose, CA 95113-2404 | 10/20/2006 1:00 pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ Attorney for Plaintiff | 9/27/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Fred W. Schwinn, Consumer Law Center, Inc., 12 South First Street, Suite 416, San Jose CA 95113-2404
Telephone No. (408) 294-6100 x111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

**EXHIBIT 4**

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 9/27/2006 | 818 West 7th Street<br>Los Angeles, CA 90017 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| QC Financial Services of California, Inc., d/b/a California Budget Finance, c/o CT Corporation System | Certified Mail<br>Return Receipt Requested |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Fred W. Schwinn | Attorney for Plaintiff |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  9/27/2006
DATE

*[signature]*
SIGNATURE OF SERVER

12 South First Street, Suite 416
ADDRESS OF SERVER

San Jose CA 95113-2404

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## DOCUMENTS TO BE PRODUCED

1. A copy of all files relating to any deferred deposit transaction between Jose G. Mejia, 124 Rancho Drive, #223, San Jose, CA 95111, as Borrower and QC Financial Services of California, Inc., d/b/a California Budget Finance, as Lender. Said documents would include, but would not be limited to, credit applications, loan documents, disclosure forms, receipts, checks, letters, log sheets, worksheets, statements, photographs, videotapes, and all other materials, documents and records contained in the above described file(s).

2. A copy of all contracts or agreements between QC Financial Services of California, Inc., d/b/a California Budget Finance and Marauder Corporation which in any way relate to the collection of debts owed to QC Financial Services of California, Inc., d/b/a California Budget Finance.

3. A copy of all contracts or agreements between QC Financial Services of California, Inc., d/b/a California Budget Finance and Nationwide Capital Recovery which in any way relate to the collection of debts owed to QC Financial Services of California, Inc., d/b/a California Budget Finance.

4. A copy of all contracts or agreements between QC Financial Services of California, Inc., d/b/a California Budget Finance and Collection Professional Services which in any way relate to the collection of debts owed to QC Financial Services of California, Inc., d/b/a California Budget Finance.

**The requirements of this Subpoena may be satisfied entirely by the production of copies of the above requested records, along with a sworn declaration of the custodian of these records, indicating the authenticity and accuracy of the records so provided, and that these are the records kept in the normal course of business, to the following address not later than 5:00 p.m. PDT on October 20, 2006.**

Fred W. Schwinn
Consumer Law Center, Inc.
12 South First Street, Suite 416
San Jose, CA 95113-2404

## DECLARATION OF CUSTODIAN OF BUSINESS RECORDS

I declare under penalty of perjury, as provided for by the laws of the United States, at 28 U.S.C. § 1746, that the following statements are true:

1. I am a duly authorized custodian of the business records of _QC Holdings dba CA Budget Finance_ and have authority to certify its business records. I make this declaration based upon my personal knowledge, and if called upon as a witness, I could and would testify competently to its contents.

2. The documents attached to this Declaration are true and correct copies of the records described in the Subpoena which was served on QC Financial Services of California, Inc., d/b/a California Budget Finance. I have thoroughly reviewed these documents and I am familiar with their contents.

3. The attached records were prepared by the personnel or staff of _QC Holdings dba CA Budget Finance_ or persons acting under its control, in the regular course of the business at or about the time of the act, condition or event recorded.

4. The attached records are business records of _QC Holdings dba CA Budget Finance_, that it relies upon for accuracy in the normal course of its business operations.

I declare under the penalty of perjury under the laws of the United States and the state of California that the foregoing is true and correct and that this Declaration is executed on the _18th_ day of _October_, 2006, at _Overland Park, KS_.

_Alan Lacy_
Custodian of Business Records

_Alan Lacy_
Name (Print or Type)

_9401 Indian Creek Pkwy, Ste 1500_
Business Address

_Overland Park, KS 66210_

_913.234.5062_
Telephone Number

# NATIONWIDE CAPITAL RECOVERY
74-923 HWY 111, SUITE 218, INDIAN WELLS, CA 92210
PHONE: 866-BAD-CHEX (866-223-2439) * FAX: 760-324-8668

## AGREEMENT FOR COLLECTION SERVICES

This Agreement for Collection Services ("Agreement") is made and entered into effective 3/24/03 ("Execution Date"), by and between Marauder Corporation d/b/a "Nationwide Capital Recovery" ("NCR") and QC Financial ("Client") (collectively, the "Parties").

### RECITALS

WHEREAS, NCR is a provider of debt collection services (the "Collection Services") and employs professional trained agents ("Agents") for the provision of the Collection Services;

WHEREAS, Client has accounts with outstanding debt ("Accounts") and these Accounts have not been paid by the indebted party ("Debtor") in a timely fashion; and

WHEREAS, NCR desires to provide Collection Services to Client and Client desires to engage NCR to provide such Collection Services pursuant to the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1. **TERM AND TERMINATION.** The term of this Agreement shall be for an Initial Trial Period, set forth in further detail in Exhibit "A," attached hereto and by this reference made a part hereof, with yearly renewals as set forth below. If, upon completion of the Initial Trial Period, NCR has met Client's recovery goals, as set forth in Exhibit "A," the Agreement shall automatically extend for a one-year period from the Trigger Date (as defined in Exhibit "A") and thereafter shall renew for an additional one-year period on each anniversary of the Trigger Date, unless terminated in writing by a Party within thirty (30) days prior to such anniversary date. If not terminated under the terms set forth in this paragraph, the Agreement shall otherwise terminate as follows:

    A. **BY CLIENT.** If Client commits a material breach of any provision of this Agreement, NCR may, by giving fifteen (15) days' prior written notice to Client, without limiting other legal remedies available to Client, do the following: terminate this Agreement and file liens against the Accounts and Client's property, of whatever kind, wherever located. In case of termination, all payments then due and owing to NCR must be made prior to the expiration of the notice period. Notwithstanding the foregoing, NCR shall make every reasonable effort to mitigate its damages if this Agreement is terminated by breach of either party.

    B. **BY NCR.** If NCR commits a material breach of any provision of this Agreement, Client shall give NCR written notice of said breach and permit NCR fifteen (15) days in which to cure said breach. If NCR fails to cure said breach, Client may do the following: terminate this Agreement and withdraw its Accounts except those Accounts currently being processed as further detailed in section 11. Notwithstanding the foregoing, Client shall make every reasonable effort to mitigate its damages if this Agreement is terminated by breach of either party.

2. **OBLIGATIONS AND DUTIES.**

    A. **NCR.** NCR will service Accounts professionally and promptly, using all methods ethically and legally permissible, subject to its Agents' professional judgment as each Account warrants. NCR shall not disclose, to any third party, Client's information or information related to Client's

297784v1

100006

## NATIONWIDE CAPITAL RECOVERY

Accounts except as necessary for the collection of Accounts or as required by law or the order of a court of competent jurisdiction.

B. **CLIENT**. Client shall assign Accounts to NCR as set forth in Exhibit "A," attached hereto and by this reference made a part hereof. Upon assignment of an Account, Client, its employees and agents, shall not initiate communication of any kind with Debtors, including but not limited to electronic, telephonic or written communication and/or billing. In the event that a Debtor contacts Client after Account assignment, Client may communicate with Debtor respecting the Account debt, but shall pay to NCR the Commission NCR would have received had NCR collected the Account Debt itself. Notwithstanding the foregoing, Client shall immediately report to NCR all phone contacts, payments, settlement offers, letters, bankruptcy notices, threats, disputes, counterclaims, or any other communication of whatever kind or by whatever means ("Communications") received from or on behalf of Debtor, his/her attorney or representative. Client shall assume full responsibility, indemnify and hold harmless NCR for any collection activity it undertakes either in compliance with or in contravention to this Paragraph. Client shall reimburse NCR for all damages and additional expense incurred by NCR by virtue of Client's non-compliance with this provision. Accounts assigned to NCR shall not be assigned to another party during the term of this Agreement, or during the processing term set forth in section 11 herein below. In the event that Client terminates this Agreement prematurely or otherwise breaches any material term of this Agreement, Client shall reimburse NCR for all damages, including but not limited to liquid damages, if applicable, provided for under section 11 herein, and additional expense incurred by NCR by virtue of Client's breach.

3. **COMMISSIONS.** Except as provided in section 1.B, NCR shall receive, as compensation for its Collection Services, that sum set forth in Exhibit "A," attached hereto and by this reference made a part hereof. Client shall not assign Accounts to NCR that have previously been assigned to another collector, collection agency or attorney. This Agreement does not contemplate Client reassigning such Accounts to NCR nor NCR receiving such Accounts from Client. If Client at any time in the future desires to assign such Accounts to NCR, Client and NCR may negotiate a separate agreement regarding the terms and Commission respecting such Accounts.

4. **MUTUAL INDEMNIFICATION AND RELEASES.**
   A. **NCR**. Subject to section 4.B. herein, NCR shall defend, hold harmless and indemnify Client from any claims of Debtors or other third parties, including actions arising from federal, state and local governmental agencies, arising by reason of Collection Services rendered by NCR and its Agents to Client.

   B. **CLIENT**. Client shall defend, hold harmless and indemnify NCR from any claims of Debtors or other third parties, including federal and state governmental agencies, arising by reason of Client's provision of incorrect or false information, including but not limited to incorrect or false information regarding Debtor's name, Account debt, fees, interest, residence, employment, family, references or any other information regarding Debtor or other third party that may proximately lead to or cause NCR, its Agents or employees to engage in illegal or ethically improper behavior in rendering the Collection Services.

5. **ACKNOWLEDGMENT OF ACCOUNTS.** For each Account NCR shall promptly acknowledge in writing the following information: Debtor name, amount of debt and date assigned to NCR. Upon receipt thereof, Client shall immediately notify NCR of any error, omission or discrepancy in Debtor's Account information.

6. **WARRANTIES.** Client warrants that it has not assigned to a third party any Accounts assigned to NCR. Client further warrants that it has full title to all claims set forth in the assigned Accounts and the

Page 2 of 22 97784v1

100007

## NATIONWIDE CAPITAL RECOVERY

Accounts are not subject to any claim, lien, encumbrance, trust, conditional sales contracts or other rights or interests of any person or entity, and that all Accounts assigned are valid legal debts owed to Client by Debtor. Client warrants that there is no suit, action, legal, administrative or other proceeding, governmental investigation, or to the best of Client's knowledge, pending, threatened against or affecting the Accounts or the underlying Debt.

7. **DEBTOR PAYMENTS.** Client authorizes NCR to endorse and deposit, into an NCR trust account, negotiable instruments received in payment of an Account, whether payable to the order of Client or NCR. NCR shall promptly deliver to the Client, by U.S. mail, a photocopy reproduction of any such instruments.

8. **STATUTORY DAMAGES, INTEREST AND FEES.** In states permitting it, NCR shall retain any statutorily permitted interest, but shall split any statutorily permissible damages and fees (excepting fees expressly for the collection of the Debt in those states permitting the addition of collection fees, as further set forth in Section 2, under the section labeled "Commission" in Exhibit "A," attached hereto and by this reference made a part hereof) collected over and above the damages, fees and interest that Client may add to Debtor's principal according to that same ratio as set forth for Commissions in Exhibit "A" attached hereto and by this reference made a part hereof. Except as expressly prohibited by law, payments received by Debtor shall be applied to the damages, fees and interest due NCR under this section before Debtor's payments are applied to the principal, damages, fees and interest due Client. When assigning a bad check, Client shall forward to NCR a clear copy, front and back, of the document, retaining the original for its records.

9. **STATEMENT/REMITTANCE.** On or about the twentieth day of each month, NCR will render to Client an accounting of all Account payments received by NCR on Client's behalf received during the prior month, setting forth for each payment: payment amount, payment date, to whom paid, and NCR commission thereon. Remittance for payments received on behalf of Client shall accompany said accounting. Upon receipt of the accounting and remittance, as set forth above, Client shall pay to NCR any balance due NCR, as indicated on said accounting, not later than the end of the month in which it is received. NCR reserves the right to reasonably delay the remittance of any amount collected if NCR has received or reasonably anticipates receipt of a court order, Debtor claim, attachment, bankruptcy filing, or an appeal relating the payment received. NCR shall notify Client, in writing, if it must delay remittance.

10. **DEBTOR BANKRUPTCY.** If a Debtor files bankruptcy, NCR may, at its sole discretion, request written permission from Client to file any and all assigned claims with the bankruptcy trustee and appear before the relevant judicial forum as necessary to preserve Client's interest in the claim. NCR shall not pursue any Account claims subject to a bankruptcy absent the express written permission of the Client.

11. **PREMATURE CANCELLATION; BREACH; LIQUID DAMAGES.** Collecting debt often requires a lengthy collection process and so NCR requires that Accounts be assigned for a minimum of one year (excepting those Accounts assigned during the Trial Period referenced in section 1 herein above which may be withdrawn without penalty within six months of assignment). Both Parties agree that at the time of the execution of this Agreement it would be difficult or impractical for the Parties to determine damages that NCR would suffer in the event Client recalls an Account prior to the termination of this Agreement as set forth herein. Therefore, pursuant to California Civil Code § 1671(b), the Parties agree that if Client terminates completely or partially and/or recalls any Account in a manner which constitutes a premature termination or other breach of this Agreement, an error or omission in the books, records, accounting and/or assignment authorization of Client, Client shall pay liquidated damages to NCR of fifteen percent (15%) of all Account Debt not paid by Debtor. One year after Account assignment Client may request withdrawal of the Account without charge by NCR except Accounts still in the process of payment (by way of example, but not limitation, those Accounts that have received a promise to pay from the Debtor), assigned judgments, and Accounts on which litigation has been commenced, all of which

*[handwritten margin note: How is this determined? NCR states]*

Page 3 of 3 297784v1

**100008**

## NATIONWIDE CAPITAL RECOVERY

cannot be withdrawn. However if the Client desires to withdraw an Account in such process, NCR may choose, at its sole discretion, to assess liquid damages hereunder and withdraw its representation in any ongoing process or litigation respecting the withdrawn Account and return said Account to Client. NCR shall be entitled to commission on payments received by Client or NCR, or their respective agents, employees or assigns, within ninety (90) days of Account withdrawal.

12. **ACTION AGAINST DEBTOR; STATUTE OF LIMITATIONS; COSTS.** NCR is under no obligation to bring an action against a Debtor absent Client's express written request to do so. Client shall bear all responsibility regarding the determination of the running of the applicable statute of limitations and/or the merits of the suit. NCR shall not be under any obligation to pursue an action against a Debtor if NCR does not receive Client's written request to bring an action at least thirty (30) days prior to running of the relevant statute of limitations period.

If Client authorizes NCR to proceed with an action, Client shall bear all costs of suit, including but not limited to: court costs, attorney fees, NCR's litigation processing fees, witness fees, copying and other fees or costs related to the administration of the action by NCR. Client shall reimburse NCR for any court imposed sanctions or fees in the event that the court finds the suit to be without merit or Client proximately causes, whether by commission or omission, the behavior sanctioned, including by way of example but not limitation: missing any relevant discovery or other deadlines or a failure to respond to discovery requests or other sanctionable actions or omissions.

13. **SETTLEMENT AUTHORITY.** If a reasonable settlement offer (seventy-five percent (75%) or greater of assigned debt) is received from a Debtor, NCR has the authority to accept this offer without further consent of or communication with the Client. If a lower offer is received from Debtor, NCR will not accept it without prior notification of, and approval from, the Client.

14. **ATTORNEY'S FEES AND COURT COSTS.** Should any Party institute a judicial proceeding, including but not limited to, institution of any action or proceeding to enforce any provision hereof, for damages by reason of any alleged breach of any provision hereof, for a declaration of such Party's rights or obligations hereunder, or for any other judicial remedy, then, if said matter is settled by judicial determination (which term includes arbitration), the prevailing Party (whether at trial or on appeal) shall be entitled, in addition to such other relief as may be granted, to be reimbursed by the losing Party for all costs, including but not limited to: filing fees, witness fees and boarding, traveling expenses, and other costs as the court deems appropriate, excepting all attorney fees, and expenses incurred thereby. As used herein, the term prevailing Party shall include the definition set forth in California Code of Civil Procedure, Section 1032(a)(4); and also any Party in whose favor declaratory relief is granted by any Court. If some form of declaratory relief is granted to opposing Parties in any action to enforce this Agreement, the Court shall have discretion to apportion costs between the opposing Parties.

15. **CONFIDENTIALITY.** The terms of this Agreement shall be and remain confidential. Except as expressly provided herein, neither NCR nor the Client may disclose the terms of this Agreement to a third party. The Parties shall carefully restrict access to the terms of this Agreement to those of its officers, directors, employees and legal counsel who clearly need such access in order to effect the terms of this Agreement. The Parties further warrant and represent that it shall advise each of those persons that they are strictly prohibited from disclosing to others any of the terms of this Agreement.

16. **SEVERABILITY.** In the event that any covenant, condition or other provision ("Clause") herein contained is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other Clause. If such Clause shall be deemed invalid due to its scope or breadth, such Clause shall be deemed valid to the extent of the scope or breadth permitted by law.

Page 4 of 4297784v1

100009

## NATIONWIDE CAPITAL RECOVERY

17. **INTEGRATION.** This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof. All agreements, covenants, representations and warranties, express and implied, oral and written, of the Parties with regard to the subject matter hereof are contained herein, in the documents referred to herein or those implementing the provisions hereof. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party to any other Party, or the respective employees and/or agents of the Parties, with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are waived, merged herein and by this Agreement superseded. NCR, by this Agreement, makes no guarantee or representation that any given Account is or will ever become collectable or respecting what amount or percentage of any given Account is or will become collectable.

18. **CAPTIONS AND INTERPRETATIONS.** Paragraph titles or captions contained herein are inserted as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof. This Agreement shall be deemed to have been drafted by each Party's respective legal counsel. No provision in this Agreement is to be interpreted for or against any Party because that Party or his legal representative drafted such provision.

19. **WAIVER.** A waiver by any Party to this Agreement of a breach of any provision of this Agreement shall not be deemed a continuing waiver or a waiver of any subsequent breach whether of the same or another provision of this Agreement, including the time for performance of any such provision.

20. **SUCCESSORS IN INTEREST.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and permissible assigns.

21. **TIME OF THE ESSENCE.** Time is expressly declared to be the essence of this Agreement and of every provision hereof in which time is an element.

22. **COUNTERPARTS; FACSIMILE SIGNATURES.** This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. Facsimile signatures shall be deemed original signatures for all purposes.

23. **EXCLUSIVITY.** Client agrees not to contract with any other entity or person for collection services respecting Accounts assigned hereunder, while the Agreement is in effect.

24. **AUTHORITY.** The undersigned Parties warrant that they are duly authorized to enter into this Agreement on behalf of each of the respective Parties hereto.

25. **NOTICES.** Any notices required to be given under this Agreement by one Party to another may be effected by personal delivery in writing, by facsimile or by mail, registered or certified, postage prepaid with return receipt requested delivered to the addresses appearing below. Facsimile notices shall be transmitted to the number appearing below. Each Party may change the address or fax number by giving written notice in accordance with this paragraph. Notices delivered personally will be deemed communicated as of actual receipt; mailed notices will be deemed communicated as of the fifth day after mailing. Facsimile notices shall be deemed delivered on the day of transmission, unless transmitted to the receiving Party during non-business hours, in which case, the notice shall be deemed delivered on the next business day.

//
//
//
//

Page 5 of 5297784v1

100010

## NATIONWIDE CAPITAL RECOVERY

**NCR**

Nationwide Capital Recovery
74-923 Highway 111
Indian Wells, CA 92210

Facsimile

**CLIENT**

QC Holdings Co.
2812 W. 47th
KC, K. 66103

---

**26. GOVERNING LAW; JURISDICTION.** This Agreement shall be construed in accordance with and governed by the laws of the State of California. This Agreement shall be construed as being executed in Riverside County, California and any action to enforce this Agreement shall brought in the same jurisdiction.

Accepted and agreed:

**CLIENT**

By: Kerry D. Hart
Its: Collection Mgr.

Date: 3-24, 2003

**NCR**

By: R. A. GAMBILL, Its: President

Date: 3-24, 2008

## EXHIBIT A

Pursuant to that Agreement for Collection Services dated March ___, 2003 ("Execution Date"), ("Agreement"), by and between Marauder Corporation d/b/a "Nationwide Capital Recovery" ("NCR") and QC FINANCIAL ("Client"), attached hereto and by this reference made a part hereof, the following terms shall govern NCR's Commission and the delivery of Accounts to NCR:

### Commission

Subject to the terms governing reassigned Accounts, as detailed in section 3 of the Agreement, and the terms for Forward Flow of Accounts set forth herein below, the Commission for Collection Services on the Accounts is as follows:

1. A Forty-two Percent (42%) Commission rate shall apply to the following states: CA, CO, ID, IN, KS, KY, LA, MO, MS, OR, SC, WA.

2. A Fifty Percent (50%) gross Commission rate (meaning NCR's fees are added to the Debt and billed directly to Debtor, with NCR retaining 50% of all payments) shall apply to the following states: AZ, IL, NV, UT.

NCR shall create discrete accounts for each state, with Commission rates as set out above, which will clearly note both the identifying store and year on each Account, and shall be set forth in the Acknowledgments described in further detail in section 5 of the Agreement. Commission, as set forth above, shall be calculated based on all payments received from or on behalf of the Debtors for payments of their respective Account Debt, whether such payment is received by Client or NCR.

### Forward Flow (Minimum Value) of Accounts

Client shall place with NCR, within seven (7) days of the Execution Date, Accounts with a combined minimum debt load of one million dollars ($1,000,000.00) ("Initial Account Placement"). If NCR meets or exceeds Client's desired gross recovery goal (total collections by NCR, not net to Client, respecting the Initial Account Placement Debt, of eighteen percent (18%) within ninety (90) days, or twenty percent (20%) in one-hundred and eighty (180) days (the date of NCR's meeting the Client's recovery goals herein shall hereinafter be referred to as the "Trigger Date")), Client shall, by the first anniversary of the Trigger Date, assign to NCR Accounts bearing a minimum Debt load of at least three million, six hundred thousand dollars and no cents ($3,600,000.00) ("Forward Flow") exclusive of the Initial Account Placement. So long as NCR continues to recover eighteen percent (18%) of the Accounts, on an annual basis, Client shall thereafter assign the same Forward Flow to NCR each year, by that year's anniversary of the Trigger Date, for the term of this Agreement. If, at the respective Trigger Date anniversary for any given year, Client does not meet the minimum Forward Flow required hereunder, the Commission assessed the Accounts assigned will be retroactively increased to fifty percent (50%) on ALL Account from the respective anniversary of the Trigger Date for that year. NCR shall bill Client, on all Accounts, for the difference between the reduced Commission rate previously charged for the year on the Accounts and the increased Commission surcharge set forth in the prior sentence. NCR shall submit such bill to Client within thirty (30) days of the anniversary of the Trigger Date. Client shall pay NCR the full amount due under the bill within thirty (30) days of receipt of the same.

Date: 3-24-2003

NCR, By: Ryon Gambill
Its: President

Date: 3-24-03

QC Financial, By: _KELEY D. HART_
Its: _Collection MGR_

Exhibit "A" to Collection Services Agreement

100012

# Customer Payment History

602-0002007
Mejia, Jose G
124 Rancho Dr. Apt 223
San Jose, CA 95111
(408)306-1759
(408)229-0662

## Payday Loans

| Loan # | Type | Origination Date | Principal | Finance Charge | 1 Payment of | Due | APR | Principal Paid | Interest Paid | Lien Fee Included | Payment Received |
|---|---|---|---|---|---|---|---|---|---|---|
| 602-0023776 | NEW | 08/09/2004 | $150.00 | $26.47 | $150.00 | 08/23/2004 | 460.07 | $0.00 | $0.00 | $0.00 | $0.00 |
| 602-0023776 | DEP | 09/08/2004 | $0.00 | $0.00 | $0.00 | 08/23/2004 | 0.00% | $150.00 | $26.47 | $0.00 | $176.47 |
| 602-0023776 | RET | 09/14/2004 | $150.00 | $176.47 | $0.00 | 08/23/2004 | 0.00% | $0.00 | $0.00 | $0.00 | $0.00 |

100014

10/04/2006 13:28:11

# Collection History Report

Page

## Debt Information
**Debt ID** 602-0001336

Store 602 - 611 Blossom Hill Road, San Jose, CA
Data Load 334  10/27/2004 09:31:49  First COR Date 10/26/2004 14:48:01
QC Status BAN - Bankruptcy  Agency Debt ID 5091989  Agency Status BAN - BANKRUPT
Loss Control Create 10/27/2004 09:31:53  Kerry Hart  Last Update 09/11/2006 23:00:00  Unknown User??
Check # 1010  Check Date 08/23/2004  Routing # 121042882  Account # 168948329

## Customer Information
Customer ID 602-0002007  Data Load 333  Unlinked CustomerNo

Name Jose G Mejia  SSN
Address 124 RANCHO DRIVE
APT 223
San Jose, CA, 95111
Phone 1 408-306-1759
Phone 2 408-229-0662
Loss Control Create 10/27/2004 09:27:55  Kerry Hart  Last Update 05/22/2006 14:03:27  Unknown User??

## Collection History
Original Amt 191.47  Amount Collected 0.00  Payment Count 0
Original Paid <Unknown>  QC Amount 0.00  QC % Collected 0.00
Amount Due 191.47  Agency Amount 0.00  Agency % Collected 0.00

## Debt Action History

| Activity Date | Time | Action | Agency | User | IC Date | Time |
|---|---|---|---|---|---|---|
| 11/04/2004 | 07:14:31 | Checked in at Corporate | | Joel Morris | 11/04/2004 | 07:13:51 |
| 11/23/2004 | 13:11:17 | Exported to Collection Agency | NCR | Kerry Hart | 11/23/2004 | 13:10:24 |
| 08/08/2006 | 00:00:00 | Recalled | | | 08/08/2006 | 11:14:02 |
| 08/08/2006 | 14:50:23 | Exported to Collection Agency | QC HOLD 2 | | 08/08/2006 | 14:57:47 |

100016

10/04/2006 13:28:11

# Collection History Report

09/11/2006   22:58:57

Page

**Debt ID**  602-0001336   09/11/2006   00:00:00

## Audit History

| Change Date | Table Name | Change Type | Src | Changed By | Field Name | Value | Old Value |
|---|---|---|---|---|---|---|---|
| 10/27/2004 09:27:55 | CUSTOMER | Created | | Kerry Hart | | | |
| 10/27/2004 09:31:53 | DEBT | Created | | Kerry Hart | | | |
| 11/04/2004 07:14:31 | DEBT_ACTION | Debt Checked in at Corporate | | Joel Morris | | | |
| 11/23/2004 13:11:17 | DEBT_ACTION | Debt Exported to Collection Agency | | Kerry Hart | | | |

Export Information: Agency: NCR Contract: Rate % of Amt Col (58.0000) From: 01/02/2004 To: 01/20/2005 Export ID: 64 @ 11/23/2004 13:10:04

| 11/26/2004 08:46:57 | CUSTOMER | Change | | Bill Elvin | PRIMARY_PHONE 408-306-1759 (C) | (408)306-17 59 |

New Value = 408-306-1759, Old Value = (408)306-1759

| 11/26/2004 08:46:57 | CUSTOMER | Change | | Bill Elvin | SECONDARY_PHO 408-229-0662 NE (C) | (408)229-06 62 |

New Value = 408-229-0662, Old Value = (408)229-0662

| 11/26/2004 08:48:14 | DEBT | Change | | Bill Elvin | AGENCY_DEBT_I 5091989 D (C) | <Unknown> |

New Value = 5091989, Old Value = <Unknown>

| 11/26/2004 08:48:14 | DEBT | Change | | Bill Elvin | AGENCY_DEBT_S 20 TATUS_TYPE_I D (I) | 0 |

New Value = 20, Old Value = 0

100017

10/04/2006 13:28:11                                    **Collection History Report**                                    Page

**Debt ID    602-0001336**

| Date/Time | Type | Action | | | |
|---|---|---|---|---|---|
| 05/22/2006 14:02:07 | CUSTOMER | Change | Agency | 27 | ADDRESS1 (C)   124 RANCHO DRIVE   124 Rancho Dr. Apt 223 |
| New Value = 124 RANCHO DRIVE, Old Value = 124 Rancho Dr. Apt 223 | | | | | |
| 05/22/2006 14:02:07 | CUSTOMER | Change | Agency | 27 | ADDRESS2 (C)   APT 223   <Unknown> |
| New Value = APT 223, Old Value = <Unknown> | | | | | |
| 05/22/2006 14:02:37 | DEBT | Change | Agency | 27 | AGENCY_DEBT_S 3   TATUS_TYPE_I   D (I)   20 |
| New Value = 3, Old Value = 20 | | | | | |
| 08/08/2006 00:00:00 | DEBT_ACTION | Debt Recalled | Agency | 27 | |
| Export Information: Export ID: 2334 @ 08/08/2006 11:11:54 | | | | | |
| 08/08/2006 11:12:41 | DEBT | Change | CORP | 27 | RECALL_DATE (T)   08/08/2006 11:09:51   <Unknown> |
| New Value = 08/08/2006 11:09:51, Old Value = <Unknown> | | | | | |
| 08/08/2006 14:50:23 | DEBT_ACTION | Debt Exported to Collection Agency | | 27 | |
| Export Information: Agency: QC HOLD 2 Contract: Rate % of Amt Col (0.0000) From: 08/07/2006 To: 08/07/2010 Export ID: 2337 @ 08/08/2006 14:52:56 | | | | | |
| 08/08/2006 :56:40 | DEBT | Change | CORP | 27 | EXPORT_DATE (T)   08/08/2006 14:50:23   <Unknown> |
| New Value = 08/08/2006 14:50:23, Old Value = <Unknown> | | | | | |
| 09/01/2006 15:45:42 | Debt | Change | Other | 707 | Debt_Status_T 2   ype_ID (I)   5 |
| New Value = 2, Old Value = 5 | | | | | |
| 09/11/2006 00:00:00 | DEBT_ACTION | Debt Recalled | | 27 | |
| Export Information: Export ID: 2412 @ 09/11/2006 22:54:12 | | | | | |
| 09/11/2006 22:57:39 | DEBT | Change | CORP | 27 | RECALL_DATE (T)   09/11/2006 22:51:46   08/08/2006 11:09:51 |
| New Value = 09/11/2006 22:51:46, Old Value = 08/08/2006 11:09:51 | | | | | |

100018